[Cite as *State v. Parker*, 2018-Ohio-296.]

STATE OF OHIO, CUYAHOGA COUNTY

IN THE COURT OF APPEALS

EIGHTH DISTRICT

STATE OF OHIO,                    )        CASE NO. CA 17 105437
                                  )
    PLAINTIFF-APPELLEE,       )
                                  )
VS.                               )        OPINION
                                  )
DEANDRE R. PARKER,                )
                                  )
    DEFENDANT-APPELLANT.      )

CHARACTER OF PROCEEDINGS:                  Criminal Appeal from the Court of
                                           Common Pleas of Cuyahoga County,
                                           Ohio
                                           Case Nos. CR-609300
                                                      CR-609840

JUDGMENT:                                  Affirmed.

APPEARANCES:

For Plaintiff-Appellee:                    Atty. Michael C. O'Malley
                                           Cuyahoga County Prosecutor
                                           Atty. Andrew T. Gatti
                                           Assistant Prosecuting Attorney
                                           1200 Ontario Street - 9th Floor
                                           Cleveland, Ohio 44113

For Defendant-Appellant:                   Atty. J. Phillip Calabrese
                                           Porter Wright Morris & Arthur LLP
                                           950 Main Avenue, Suite 500
                                           Cleveland, Ohio  44113

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Seventh District Court Of Appeals
Sitting By Assignment

Dated: January 25, 2018

ROBB, P.J., sitting by assignment.

**{¶1}** Defendant-Appellant Deandre Parker appeals from his conviction entered in Cuyahoga County Common Pleas Court for burglary and attempted burglary. The issues presented in this appeal are whether the imposition of a consecutive sentence is contrary to law, whether the plea was invalid, and if Appellant received ineffective assistance of trial counsel. For the reasons expressed below, all three arguments lack merit. The convictions are affirmed.

<u>Statement of the Case</u>

**{¶2}** Over a two day period in July 2015 two houses in the Rocky River area were burglarized. The victims of the crimes were the Sheehan family and the Dunn family. Less than $1,000 in cash and/or property was taken from each home. A pair of Dr. Dre Beats headphones and cash were taken from the Sheehan residence; cash was taken from the Dunn residence.

**{¶3}** In August 2015, there was an attempt to burglarize a home in the Lakewood area. That home was owned by Neil Sidorak and there was video surveillance of the burglary attempt.

**{¶4}** Appellant was detained shortly after the attempted burglary wearing the same outfit seen on the tape and in his possession were the Dr. Dre Beats headphones. The serial number on the headphones matched the ones taken from the Sheehan residence.

**{¶5}** In his interview with the police, Appellant confessed to both Rocky River burglaries. Thereafter, Appellant was indicted for two counts of burglary, violations of R.C. 2911.12(A)(1), second-degree felonies; two counts of petty theft, violations of R.C. 2913.02, first-degree misdemeanors; and one count of attempted burglary, a violation of R.C. 2911.12(A)(1) and R.C. 2923.02, a third-degree felony. 9/12/16 and 9/21/16 indictments.

**{¶6}** The cases proceeded through discovery. A visiting judge was appointed to preside over the matter because one of the victims of the Rocky River

burglary was Cuyahoga County Common Pleas Court Judge Brendan Sheehan. 11/1/16 J.E.

{¶7} At a November pretrial hearing, Appellant orally requested a competency evaluation. 11/7/16 J.E. The request was granted. 11/7/16 J.E. A second pretrial hearing was set for December 2, 2016. At that hearing, after receiving the psychological evaluation, the parties stipulated Appellant was competent to stand trial. 12/5/16 J.E. Appellant also requested a continuance to review discovery.

{¶8} The next pretrial hearing was held on December 16, 2016. Appellant entered a guilty plea to the indicted offenses. A PSI was ordered and sentencing was scheduled.

{¶9} At sentencing, the state set forth the facts surrounding the crimes and stated the victims' sense of security were violated. Tr. 22-23. The state did not recommend a sentence; rather it stated it was "fine" with any sentence the trial court imposed. Tr. 23.

{¶10} Appellant and his mother also spoke at sentencing. His mother explained Appellant has ADHD, he lives with her, has had behavioral problems since kindergarten, and had an Individualized Education Plan during his school years to address his educational needs. Tr. 25. She stated Appellant is a follower, is easily manipulated, and "makes really, really stupid decisions." Tr. 26-27. Appellant's counsel asked for a sentence on the lower end of the sentencing range. Tr. 30.

{¶11} The trial court sentenced Appellant to a ten year aggregate sentence. He received five years for each burglary offense and those sentences were ordered to run consecutively. For the attempted burglary offense he received three years to run concurrently to the ten years ordered for the burglary offenses. Six month sentences for each petty theft conviction were ordered to be served concurrently to the other sentences. In ordering this sentence, the trial court made consecutive sentence findings and referred to Appellant's criminal record.

{¶12} Appellant timely appealed his conviction.

First Assignment of Error

"The imposition of consecutive sentences is contrary to Ohio law and violates defendant's substantive and procedural rights under Ohio law and the State and Federal Constitutions."

{¶13} An appellate court's review of felony sentences is governed by R.C. 2953.08. *State v. Hayes*, 8th Dist. No. 104818, 2017-Ohio-7716, ¶ 45. Accordingly, this court "may increase, reduce, modify a sentence, or vacate and remand for resentencing if the court clearly and convincingly finds that the record does not support the sentencing court's statutory findings under R.C. 2929.14(C)(4) or the sentence is contrary to law." *State v. Durrette*, 8th Dist. No. 104050, 2017-Ohio-7314, ¶ 38 citing *State v. Wenmoth*, 8th Dist. No. 103520, 2016–Ohio–5135, ¶ 12. "A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *Hayes*, 2017-Ohio-7716 at ¶ 45. Clear and convincing evidence "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶14} In arguing the imposition of consecutive sentences are contrary to law, Appellant does not argue the trial court failed to make the R.C. 2929.14(C)(4) statutorily mandated consecutive sentence findings at the sentencing hearing and to state those findings in the judgment entry. Rather, Appellant contends the trial court improperly focused on the fact that one of the victims of the burglary was a judge and his family. Appellant also asserts there was nothing "so great or unusual" about the burglaries to justify the trial court's finding that the "harm caused * * * was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct." These were "garden variety" burglaries and as such, there is

nothing in the record indicating the harm caused was so great or unusual. Lastly, he asserts the sentence is disproportionate to the seriousness of the offenses and not consistent with other similar offenses.

{¶15} Despite Appellant's insistence, the record does not support the position that the trial court imposed consecutive sentences because the victim of one of the burglaries was a judge. The record indicates all victims' impact statements were taken into equal consideration and no extra consideration was placed on the fact that one of the victims was a judge.

{¶16} During the sentencing hearing, the state referenced how the crimes occurred and indicated all victims lost a sense of security because of the crimes:

> MR. GATTI [the state]: * * * So the common theme between all victims is that these occurred while the victims were home, asleep in their beds. They were – in Mr. Sidorak's case, he says due to the amount of issues this person has been brought up on, I fear every night, and they're asking for the maximum penalty that you can impose. And that was Mr. Sidorak.
>
> Mr. and Mrs. Sheehan, their financials you have before you. There's some cash, about $226. Some Beats wireless headphones; that was about $400.
>
> They have a similar victim impact statement. In reading it, they just – I'll read one printed part. The break-in and burglary has stolen our entire family's sense of security and trust that we feel safe in our home.
>
> And Mrs. Sheehan goes on to explain how their daughters, their teenage daughters and their son don't feel safe. Their son actually feels at fault because he's the one that forgot to lock the patio door. He sleeps with pocketknives by his bed as a result of the break-in.
>
> I talked to Mr. Sheehan and Michelle. They wanted to be here. They waffled back and forth on whether they should appear. They ultimately

decided not to appear. And they told me that whatever you – whatever sentence you impose, they will respect that, Judge.

And finally, the Dunns, they also have – they estimate about $180 in cash was taken from their residence. No other costs as a result of the incident incurred.

Again, they say their sense of security has been violated. And they trust in your disposition of the case, your Honor.

Tr. 21.

**{¶17}** The trial court relied heavily on those statements in determining the appropriate sentence:

I am particularly going to focus here on the victim impact statements as stated by the prosecutor. All of these victims have been permanently damaged in terms of their sense of security. They'll never, ever feel secure or safe in their home again. We have one family where the child has a knife he takes to bed because he's afraid somebody is going to come in again and burglarize his house while they're there and they're asleep. What you did to them has lifelong ramifications.

Tr. 34-35.

**{¶18}** Admittedly, the child referenced in this statement is the judge's child. However, the focus is not on the fact that he is the judge's son, but on the fact of how this crime has impacted him. That is not an improper consideration.

**{¶19}** Consequently, the argument that consecutive sentences were based solely on the fact that one victim was a judge is meritless.

**{¶20}** Next, Appellant claims the trial court's finding that the offenses were committed as part of a course of conduct and "the harm caused by these multiple offenses to these multiple victims is so great or unusual that no single prison term will adequately reflect the seriousness of the defendant's conduct" finding is not

supported by the record. He contends the only thing that makes these crimes so great or unusual is a judge was a victim of one of the burglaries.

**{¶21}** As already explained above, the trial court did not rely on the victim's status of being a judge as a basis for imposing consecutive sentences. That said, Appellant still argues these are "garden variety" burglaries and the course of conduct/so great or unusual finding is contrary to law.

**{¶22}** Although the record in this case probably supports the course of conduct/so great or unusual finding, we do not have to make such determination. R.C. 2929.14(C)(4) requires a sentencing court to find: "(1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public, and (3) one of the findings described in subsections (a), (b) or (c). Subsections (a), (b), and (c) provide:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)–(c).

**{¶23}** The course of conduct/harm caused was so great or unusual that no single prison term will adequately reflect the seriousness of the defendant's conduct, is the R.C. 2929.14(C)(4)(b) finding. The trial court made this finding at the sentencing hearing. Tr. 36. However, in the judgment entry, the trial court did not make this finding. Rather, it made the R.C. 2929.14(C)(4)(c) finding. 1/20/17 J.E. It stated:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

1/20/17 J.E.

**{¶24}** The R.C. 2929.14(C)(4)(c) finding was also made at the sentencing hearing. Tr. 33-34. The trial court reviewed Appellant's criminal history and indicated over the past five years there is an escalating pattern of theft offenses. Tr. 33. The trial court then proceeded to list the crimes from the past five years, which started with possession of criminal tools and disorderly conduct, and moved on to receiving stolen property and misuse of credit cards. Tr. 33-34. Included in that criminal history were multiple drug abuse, marijuana, convictions. Tr. 34. Accordingly, the record undisputedly supports a R.C. 2929.14(C)(4)(c) finding.

**{¶25}** Therefore, whether or not the record supports a R.C. 2929.14(C)(4)(b) finding is immaterial. Not including the (C)(4)(b) finding, the trial court made three R.C. 2929.14(C)(4) required consecutive sentence findings at the sentencing hearing and in the judgment entry.

**{¶26}** Lastly, Appellant argues the consecutive sentence is not proportionate to the seriousness of the offense and is not consistent to similar offenses. "'Proportionality' relates solely to the punishment in the context of the offender's

conduct (does the punishment fit the crime)." *State v. Brewster*, 8th Dist. No. 103789, 2016-Ohio-3070, ¶ 10. "Consistency," for purposes of R.C. 2929.11(B), relates to the sentences in the context of sentences given to other offenders. *Id.*

**{¶27}** The trial court found the escalating nature of Appellant's criminal behavior and the effect of the burglaries on the victims warranted non-maximum consecutive sentences.

As Appellant noted, this court has stated:

There is no grid under Ohio law under which identical sentences must be imposed for various classification of offenders. "The task of the appellate court is to examine the available data not to determine if the trial court has imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although the offense may be similar, distinguishing factors may justify dissimilar treatment."

*State v. Dawson*, 8th Dist. 86417, 2006-Ohio-1083, ¶ 31.

**{¶28}** The record in this case indicates the sentence was not disproportionate considering the effect on the victims. Furthermore, Appellant's escalating criminal behavior indicates there was not dissimilar treatment.

**{¶29}** For the above stated reasons, this assignment of error lacks merit.

Second Assignment of Error

"The trial court erred by accepting a guilty plea unsupported by consideration; therefore, defendant's plea is invalid and was not entered knowingly, intelligently, and voluntarily."

**{¶30}** Appellant argues his plea was not entered into knowingly, intelligently, and voluntarily. He does not contend the trial court failed to advise him of constitutional and nonconstitutional rights pursuant to Crim.R. 11(C) prior to accepting the guilty plea. Rather, he argues the guilty plea was not supported by consideration. The principles of contract law govern plea agreements and therefore, since the state did not offer him anything in exchange for his guilty plea, he contends

the contract lacked consideration. As such, the plea was invalid and not entered into knowingly, intelligently, and voluntarily.

{¶31} His argument is meritless for three reasons.

{¶32} First, his argument appears to be based on the assumption that there was a plea agreement in this case. Crim.R. 11(F) states, "When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court." The record is devoid of any support for the assumption there was a plea agreement. There was no written plea agreement filed. Orally there is no mention of a plea agreement; the words "plea agreement" were not used during the hearing and there was no implicit indication at the hearings indicating there was a plea agreement. Without an agreement, the basic assumption underlying his argument fails. Since there was no agreement, we do not need to determine if consideration is required for a plea agreement and if there was consideration in this case.

{¶33} Second, Ohio law does not appear to prohibit an offender from pleading guilty to the indicted offenses without making an agreement with the state. Crim.R. 11(F) does not preclude an offender from entering a plea without an agreement; it only requires agreements to be stated on the record. Furthermore, case law does not indicate an offender cannot plead guilty to the indicted offenses without first entering an agreement with the state. Recently, in reviewing a plea colloquy to determine if a guilty plea was entered into knowingly, intelligently, and voluntarily, the Fifth Appellate District specifically noted that the offender pled guilty to the indicted offense, the state did not offer anything in consideration for the guilty plea, and the trial court noted as such at the change of plea hearing. *State v. Shay*, 5th Dist. No. 17-COA-014, 2017-Ohio-7819, ¶ 2, 13. The appellate court reviewed the plea colloquy and found that it complied with Crim.R. 11 and thus, the plea was entered into knowingly, intelligently, and voluntarily. The appellate court's holding was not an explicit holding on consideration and whether a plea is knowingly, intelligent, and voluntary. The implicit effect of the ruling is that consideration is not needed. Or in

other words, pleas are permitted to be entered without an agreement between the state and offender. An offender may make a strategic decision to plead guilty to the indicted offense to show remorse and take responsibility for his/her actions.

**{¶34}** Third, even if there was a plea agreement and if consideration was required, the record suggests there was consideration. The state did not lessen any of the charges, but it did stand silent on what sentence should be imposed. It stated it was "fine" with any sentence the trial court chose to impose. Tr. 23. Two of the victims, the Sheehans and Dunns deferred to the court on sentencing. Tr. 23. The other victim, Mr. Sidorak, asked for imposition of the maximum. Tr. 22. Given Mr. Sidorak's statement and Appellant's record, the state could have asked for the maximum, but it did not. Therefore, there was some consideration.

**{¶35}** For the above stated reasons, this assignment of error is meritless.

### Third Assignment of Error

"This Court should set aside Defendant's guilty plea and sentence due to the ineffective assistance of his trial counsel."

**{¶36}** In order to establish ineffective assistance of counsel, Appellant must demonstrate counsel's performance was deficient, and he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052 (1984). Performance is only considered constitutionally deficient when it falls below an objective standard of reasonableness. *Id.* at 688; *State v. Singleton*, 8th Dist. No. 98301, 2013-Ohio-1440, ¶ 67. Reviewing courts "must indulge a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance." *Strickland; Singleton*. Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

**{¶37}** Appellant's first argument is trial counsel was ineffective for failing to negotiate a plea agreement. Appellant contends counsel should have attempted to have the charges lessen, some of the charges dismissed, or the parties agree to a

jointly recommended sentence. He argues counsel determined, without reviewing the discovery he received, Appellant should enter a plea to the indicted charges.

**{¶38}** The state argues Appellant and trial counsel decided on a strategy of showing genuine remorse in an effort to receive a minimum sentence. This was a trial strategy and did not constitute ineffective assistance of counsel.

**{¶39}** Regarding the review of the discovery materials, Appellant's allegations are not completely accurate. At the December 2, 2016 pretrial hearing defense counsel received discovery. When he was asked by the trial court about that discovery, he responded:

> Yes, Your Honor. We've had open conversation with the Prosecutor's Office. I believe I have in my possession all of the discovery that they have. I've not had an opportunity to review it. Well, I have had an opportunity to review all the written documentation, but I received a number of videotapes. I am prepared to go through those – I have a portable video machine. I will have a contact visit with the client and will go through those. His mother's in the courtroom today. I told him I would share that with her also.
>
> I believe at the final pretrial we will have a better perspective of this case and I think it should settle.

Tr. 5-6.

**{¶40}** Counsel's statement that the case should settle appears to be a misstatement when considered in context. It appears counsel meant after reviewing the discovery he would have a better perspective of whether to settle. Thus, the discovery argument does not support the position that counsel failed to negotiate a plea.

**{¶41}** That said, there is still the issue of whether counsel should have negotiated a plea agreement given the facts of this case. It has recently been explained:

Ohio courts have recognized that "'[a]n attorney, who advises his client to plead guilty as charged when the client receives no benefit at all in exchange therefore, could possibly be deemed to have failed in his duty to competently represent his client.'" However, "the benefit a defendant receives as a result of pleading guilty is not necessarily reflected by the penalty ultimately imposed on him." Instead, courts should consider "the totality of the circumstances surrounding the plea in determining whether the appellant received any benefit in exchange for the plea."

(Internal citations omitted). *State v. Brown*, 8th Dist. No. 104095, 2017-Ohio-184, ¶ 13.

**{¶42}** Considering the totality of the circumstances, including Appellant admitting to the commission of the crimes and having the stolen property found in his possession, it appears counsel was competent in his representation. The guilty plea could qualify as strategy. Typically trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980); *State v. Gooden*, 8th Dist. No. 88174, 2007-Ohio-2371. It was a viable trial strategy to plead to the indictment, take responsibility for his actions, and show remorse. Even if he had pled to a lesser offense, the trial court was still permitted to consider the underlying offenses in determining the sentence to impose. *State v. Blevins*, 8th Dist. No. 105023, 2017-Ohio-4444, ¶ 36. Accordingly, pleading to the original indictment, rather than a negotiated lesser offense may display to the trial court that the offender is taking more responsibility for the crime and is more remorseful.

**{¶43}** Furthermore, even if the parties agreed to a plea agreement to lesser charges or a jointly agreed sentence, the trial court was not bound to accept or follow that agreement. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28 ("[T]rial courts may reject plea agreements and that they are not bound by a jointly recommended sentence."). Nothing in the record suggests the trial court would have accepted the plea or sentenced Appellant to any agreed upon sentence.

**{¶44}** Therefore, for those reasons counsel was not ineffective for failing to negotiate a plea agreement or agreed sentence.

**{¶45}** Appellant next argues counsel was ineffective for failing to test the prosecutor's case. Given the facts of this case, this argument lacks merit. A home video surveillance shows Appellant attempting to break into one house. Then when he was questioned, property stolen in another burglary was found on his person. When asked about it, Appellant admitted to that burglary and one other burglary.

**{¶46}** Given the evidence, there were not many viable means to "test" this case. "'Attorneys need not pursue every conceivable avenue; they are entitled to be selective.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 222. We note defense counsel did pursue two different avenues in defending Appellant.

**{¶47}** First, defense counsel requested and received a psychological evaluation of Appellant to determine if he was competent to stand trial. Given statements by counsel and Appellant's mother this was a viable avenue to pursue. Tr. 23-25. The result of the evaluation, however, was Appellant was competent to stand trial.

**{¶48}** Second, counsel requested a sentence on the lower end of the sentencing range. In asking for such, defense counsel referred to the psychological evaluation which indicated Appellant suffered from depression and antisocial personality disorder. Tr. 29. Counsel also indicated no one was physically hurt from the crimes, the property damage was minimal, and this was Appellant's first felony conviction. Tr. 30.

**{¶49}** Therefore, counsel did strategically pursue the most arguably effective avenues. Given the evidence, this court is reluctant to conclude defense counsel should have made additional efforts to "test" the prosecutor's case. In evaluating a claim of ineffective assistance of counsel, we must be mindful that there are countless ways for an attorney to provide effective assistance in a given case. *Strickland*, 466 U.S. 668 at 689.

**{¶50}** Moreover, the record in this case does not indicate counsel was deficient. Counsel met with his client six or seven times before the December 2, 2016 pretrial hearing. Tr. 7. The court noted at that hearing Appellant said a lot of good things about his attorney when his competency to stand trial was evaluated. Tr. 7-8. At the change of plea hearing Appellant stated he was satisfied with his legal representation. Tr. 15-16. At sentencing, counsel argued for a sentence on the lower end of the sentencing range; those arguments were based on Appellant's mental health and his lack of a felony record. Tr. 29-30. Thus, given the presumption that counsel was competent, we hold counsel's performance did not amount to ineffective assistance of counsel.

**{¶51}** Appellant asks this court to hold that the claims raised in this appeal are preserved to use with other proof outside the record for a petition for post-conviction relief. Such a request is premature. If there is proof outside the record supporting Appellant's position that counsel was ineffective, then those issues should be raised in a postconviction petition.

**{¶52}** This assignment of error lacks merit.

### Conclusion

**{¶53}** All three assignments of error are meritless. Appellant's conviction is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.

Seventh District Court of Appeals
Sitting by Assignment

APPROVED:

_____
CAROL ANN ROBB, JUDGE
SEVENTH DISTRICT COURT OF APPEALS
SITTING BY ASSIGNMENT